# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MANUEL DE JESUS ORTEGA
MELENDRES; JESSICA QUITUGUA
RODRIGUEZ; DAVID RODRIGUEZ;
VELIA MERAZ; MANUEL NIETO, Jr.;
SOMOS AMERICA,
                    *Plaintiffs-Appellees,*

v.

JOSEPH M. ARPAIO; MARICOPA
COUNTY SHERIFF'S OFFICE,
                    *Defendants-Appellants.*

No. 12-15098

D.C. No.
2:07-cv-02513-GMS

OPINION

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, District Judge, Presiding

Argued and Submitted
September 13, 2012—San Francisco, California

Filed September 25, 2012

Before: J. Clifford Wallace, Susan P. Graber, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Wallace

**COUNSEL**

Timothy J. Casey (argued) and James L. Williams, Schmitt, Schneck, Smyth, Casey & Even, P.C., Phoenix, Arizona, for the defendants-appellants.

Thomas P. Liddy, Maricopa County Attorney's Officer, Phoenix, Arizona, for the defendants-appellants.

Anne Lai (argued), Jerome N. Frank Legal Services Organization, New Haven, Connecticut, for the plaintiffs-appellees.

Stanley Young and Andrew C. Byrnes, Covington & Burling LLP, Redwood Shores, California, for the plaintiffs-appellees.

Tammy Albarran and David R. Hults, Covington & Burling LLP, San Francisco, California, for the plaintiffs-appellees.

Lesli Gallagher, Covington & Burling LLP, San Diego, California, for the plaintiffs-appellees.

Cecillia D. Wang, ACLU Foundation Immigrants' Rights Project, San Francisco, California, for the plaintiffs-appellees.

Nancy Ramirez, Mexican American Legal and Educational Fund, Los Angeles, California, for the plaintiffs-appellees.

Dan Pochoda and James Lyall, ACLU Foundation of Arizona, Phoenix, Arizona, for the plaintiffs-appellees.

Andre I. Segura, ACLU Foundation Immigrants' Rights Project, New York, New York, for the plaintiffs-appellees.

---

## OPINION

WALLACE, Senior Circuit Judge:

Sheriff Joseph M. Arpaio and the Maricopa County Sheriff's Office (collectively, the Defendants) appeal from the district court's December 23, 2011 order (Order), which granted Manuel de Jesus Ortega Melendres, David and Jessica Rodriguez, Manuel Nieto, Jr., Velia Meraz, the organization Somos America, and the class of individuals the named plaintiffs represent (collectively, the Plaintiffs) "partial injunctive relief" prohibiting the Defendants from detaining any individual "based only on knowledge or reasonable belief, without more, that the person is unlawfully present within the United States." We have jurisdiction to review the district court's order under 28 U.S.C. § 1292(a)(1), and we affirm.

I.

The Plaintiffs contend that the Defendants have a "custom, policy and practice of racial profiling toward Latino persons

in Maricopa County and an unconstitutional policy and practice of stopping Latino drivers and passengers pretextually and without individualized suspicion or cause, and of subjecting them to different, burdensome, stigmatizing and injurious treatment once stopped," under the auspices of enforcing federal immigration laws and/or Arizona state immigration-related laws. In particular, the Plaintiffs allege that, since September 2007, the Defendants and persons under their control have conducted racially discriminatory traffic stops and launched "crime suppression sweeps," also known as "saturation patrols," targeting Latinos as part of their immigration enforcement plan.

It is alleged that the Defendants have, for some time, sought to enforce immigration-related laws. In 2006, as part of a "crackdown" against illegal immigration, the Defendants allegedly entered into an agreement with the United States Immigration and Customs Enforcement (ICE) agency whereby a number of the Defendants were cross-certified to enforce federal civil immigration laws under section 287(g) of the Immigration and Nationality Act (Act). *See* 8 U.S.C. § 1357(g) (providing for the enforcement of civil immigration laws by local law enforcement agencies where the United States Attorney General enters into a written agreement with local officials). In 2009, however, ICE modified its agreement with the Defendants such that the Defendants' deputies no longer had Act section 287(g) authority to enforce civil immigration laws except in jails. The Plaintiffs allege that the Defendants racially profiled Latinos in their immigration enforcement program both before and after ICE modified its agreement with the Defendants.

Each of the five named plaintiffs was stopped by defendant officers during one of three traffic incidents. The named individual plaintiffs, each of whom is of "Latino descent and, by physical appearance, [a] person[ ] of color," alleged that they were stopped, detained, searched, and/or questioned by Defendant officers pursuant to the Defendants' policy or cus-

tom of racially profiling Latinos during traffic stops. Somos America, a membership organization, has likewise alleged that under the Defendants' immigration enforcement program, its members have been "unlawfully targeted, stopped, questioned and/or detained by" defendant officers because of their race. The named plaintiffs further alleged that, just as they have been harmed, similarly situated Latino individuals "have been or will be in the future, stopped, detained, questioned or searched by [the Defendants'] agents while driving or sitting in a vehicle on a public roadway or parking area in Maricopa County, Arizona."

The Plaintiffs filed this putative class civil rights action alleging that the Defendants' racially discriminatory policy violates the Fourth and Fourteenth Amendments to the United States Constitution, Article II, section 8 of the Arizona Constitution, and Title VI of the Civil Rights Act of 1964. The Plaintiffs sought declaratory and injunctive relief to prevent the Defendants from engaging in unlawful racial profiling and other "racially motivated treatment" of the plaintiff class.

After discovery, the parties filed competing motions for summary judgment. For their part, the Plaintiffs moved for partial summary judgment on their Fourteenth Amendment claim, contending that undisputed evidence established that the Defendants racially profiled Latinos when conducting their crime-suppression sweeps in response to racially charged citizen requests. At the summary judgment hearing, they also moved for summary judgment on Ortega Melendres's Fourth Amendment claim that the Defendants may not detain a person based solely on suspicion about that person's unlawful immigration status. The Plaintiffs concurrently sought certification of a class composed of "[a]ll Latino persons who, since January 2007, have been or will be in the future stopped, detained, questioned or searched by [the Defendants'] agents while driving or sitting in a vehicle on a public roadway or parking area in Maricopa County, Arizona."

The Defendants filed a competing motion for summary judgment, challenging the Plaintiffs' standing to seek declaratory and injunctive relief. The Defendants also sought summary judgment on the Plaintiffs' Fourth Amendment claims, arguing that the traffic stops of the named plaintiffs were based on probable cause. Finally, the Defendants argued that undisputed evidence established that the Defendants do not engage in racial profiling and that the Plaintiffs' Fourteenth Amendment and Title VI claims must fail.

In ruling on the competing summary judgment motions, the district court held that the Plaintiffs had standing to pursue equitable relief on their Fourth Amendment, Fourteenth Amendment, and Title VI claims. The district court likewise certified the Plaintiffs' proposed class. The court then granted the Plaintiffs' motion for partial summary judgment on their Fourth Amendment claims and entered a preliminary injunction barring the Defendants from detaining an individual based solely on reasonable suspicion or knowledge that the individual is unlawfully present in the country. Finally, the district court granted the Defendants' motion for summary judgment as to two named plaintiffs, but denied their remaining motions and ordered that trial proceed on the Plaintiffs' Fourth Amendment, Fourteenth Amendment, and Title VI claims. The trial has been held, but the district court has not yet issued a post-trial decision or final judgment.

## II.

On appeal of the district court's decision granting "partial injunctive relief," the Defendants ask us to address a number of issues, including the district court's: determination that the Plaintiffs have standing to pursue injunctive relief on Fourth Amendment grounds; statements of Fourth Amendment law; decision to certify the plaintiff class; description of Arizona Revised Statutes section 13-2929; and conclusion that the Plaintiffs have standing to pursue their Fourteenth Amendment and Title VI claims.

While the Defendants raise a number of issues in this appeal, we emphasize that we have before us only an *order* granting "partial injunctive relief." Although the Defendants attempt to style this appeal as one from permanent injunctive relief, the district court has not entered final judgment in this case. Indeed, the trial has only recently concluded and final judgment remains on the horizon. Additionally, there is nothing in the Order purporting to provide a permanent remedy. Thus, we treat the Order as granting only preliminary injunctive relief. As a result, our task on this appeal is to determine whether the district court's partial, preliminary injunctive relief was appropriate—a limited form of review. *See Zepeda v. INS*, 753 F.2d 719, 724 (9th Cir. 1983). Thus, except with respect to those issues that we identify below, we need not perform the searching review that the Defendants invite us to undertake, as such review should be had only after the district court enters a final judgment.

## III.

We turn first to the extent of our jurisdiction to hear this appeal. While we unquestionably have jurisdiction to hear an interlocutory appeal of the district court's preliminary injunction, *see* 28 U.S.C. § 1292(a)(1), we *may* also exercise pendent appellate jurisdiction over any "otherwise non-appealable ruling [that] is 'inextricably intertwined' with or 'necessary to ensure meaningful review of' the order properly before us on interlocutory appeal," *Meredith v. Oregon*, 321 F.3d 807, 813 (9th Cir. 2003), *as amended*, 326 F.3d 1030 (9th Cir. 2003), *quoting Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995). We have explained that "[d]istrict court rulings are 'inextricably intertwined' with a preliminary injunction when 'the legal theories on which the issues advance [are] . . . so intertwined that we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal, or . . . resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue.' " *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127,

1134 (9th Cir. 2005), *quoting Meredith*, 321 F.3d at 814. We have also construed "necessary to ensure meaningful review" narrowly to require "much more than a tangential relationship to the decision properly before us on interlocutory appeal." *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 669 (9th Cir. 2004). Thus, we have explained that an issue is "necessary to ensure meaningful review" where the issue "calls into question the district court's '*authority to rule* on a party's motion for a preliminary injunction.' " *Hendricks*, 408 F.3d at 1134, *quoting Meredith*, 321 F.3d at 816.

Based on the above, we have exercised jurisdiction to review issues related to sovereign and qualified immunity, subject matter jurisdiction, and abstention. *See Meredith*, 321 F.3d at 816. Indeed, "the common thread" running through our decisions to exercise our pendent jurisdiction "to ensure meaningful review" is that pendent jurisdiction is appropriate to review those issues that implicate "the very power the district court used to issue the rulings then under consideration." *Hendricks*, 408 F.3d at 1134-35 (internal quotation marks omitted).

We have emphasized, however, that we "should exercise restraint in reviewing on interlocutory appeal otherwise non-appealable [issues]." *Meredith*, 321 F.3d at 812. With this consideration in mind, we are convinced that "meaningful review" of this limited preliminary injunction at issue here necessitates that we address only two otherwise non-appealable pendent issues related to the district court's authority to enter class-wide injunctive relief: (1) whether the Plaintiffs lacked standing to pursue the Fourth-Amendment-related injunction the district court ultimately ordered; and (2) whether the district court erroneously certified the plaintiff class. We address each in turn.

A.

First, whether the Plaintiffs had standing to pursue an injunction on Fourth Amendment grounds plainly bears on the

authority of the district court to enter injunctive relief on those grounds. *See City of Los Angeles v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) (explaining that Article III's standing requirements are jurisdictional). Accordingly, a review of the Plaintiffs' Fourth Amendment standing is "necessary to ensure meaningful review" of the district court's Fourth-Amendment-related injunction. Because the injunction relates only to the Fourth Amendment, however, we will not exercise our pendent jurisdiction to review the Defendants' additional argument that the Plaintiffs lacked standing to bring their Fourteenth Amendment and Title VI claims.

The Defendants argue that the Plaintiffs lack standing to pursue their Fourth Amendment claims because "[n]one of the named Plaintiffs can demonstrate a 'credible' and 'genuine' threat of future traffic stop interaction with the [Defendants], or any likely future harm by the [Defendants]. The named Plaintiffs [thus] lack the standing to seek equitable relief because 'it is not sufficiently likely that [Plaintiffs] will again [be] stopped by the [Defendants].' " (Quoting *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (1999) (en banc)).

**[1]** "Although questions of standing are reviewed de novo, we will affirm a district court's ruling on standing when the court has determined that the alleged threatened injury is sufficiently likely to occur, unless that determination is clearly erroneous or incorrect as a matter of law." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir.), *cert. denied*, 131 S. Ct. 503 (2010); *see also Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). To have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate "that he is realistically threatened by a repetition of [the violation]." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). We have "enumerated two ways in which a plaintiff can demonstrate that such injury is likely to recur." *Mayfield*, 599 F.3d at 971. "First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and

that the injury 'stems from' that policy." *Armstrong*, 275 F.3d at 861. "Second, the plaintiff may demonstrate that the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.' " *Id.* (alterations in original), *quoting LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985).

**[2]** Here, the district court expressly found that the Plaintiffs "are sufficiently likely to be seized in violation of the Fourth Amendment." That finding rests on the Defendants' express claim of "authority to detain persons [they believe] are not authorized to be in the country . . . . 'based only upon a reasonable suspicion, without more, that the person is not legally present within the United States.' " The Plaintiffs also presented evidence that the Defendants have engaged in a pattern or practice of conducting traffic stops as part of "saturation patrols" or "sweeps" targeting Latinos suspected of being illegally present in the country. Exposure to this policy while going about one's daily life, the district court determined, constitutes "ongoing harm and evidence that there is 'sufficient likelihood' that the Plaintiffs' rights will be violated again." The district court specifically found that the Defendants had a policy and practice of violating the Plaintiffs' Fourth Amendment rights. Thus, although it held that the likelihood of a future stop of a particular individual plaintiff may not be "high," we are not convinced that the district court erred in determining that future injury was nevertheless "sufficiently likely" given the Defendants' stated policy and practice. *See Mayfield*, 599 F.3d at 970-71 (looking to the government's policy and pattern of officially sanctioned unlawful behavior to determine standing); *see also Lyons*, 461 U.S. at 106 (explaining that a victim of police misconduct could seek an injunction where the government "ordered or authorized police officers" to enforce an unconstitutional policy).

Further, while standing is not appropriate where a plaintiff can avoid injury by avoiding illegal conduct, *see Armstrong*,

275 F.3d at 865, the Defendants are incorrect that the Plaintiffs may avoid being detained by simply avoiding criminal activity. Indeed, the Defendants alleged that they have authority to detain "individuals based only on reasonable suspicion or probable cause that a person is not authorized to be in the United States." Because, as will be explained in greater detail below, mere unlawful presence in our country is not a crime, *see Arizona v. United States*, 132 S. Ct. 2492, 2505 (2012), even if the Plaintiffs comply with all criminal laws enforceable by the Defendants, under the Defendants' view of the Fourth Amendment, the Plaintiffs remain vulnerable to unlawful detention *solely* because an officer has reasonable suspicion or knowledge that they are not authorized to be present in the United States. Nor are we persuaded by the Defendants' assertion that the Plaintiffs can avoid the claimed injury merely by obeying all traffic laws. Some Plaintiffs were only passengers in vehicles that the Defendants stopped; there is no claim that those passengers disobeyed traffic laws. Plaintiff-drivers fare no better because the Defendants could initiate a stop with probable cause that a traffic violation had occurred—whether or not the Plaintiff-drivers had actually committed a traffic infraction—and then proceed to detain the Plaintiff-drivers based solely on reasonable suspicion as to the legality of their presence in the United States. Indeed, one Plaintiff-driver was released after detention without being issued any traffic citation. Thus, even as to the Plaintiff-drivers, adherence to traffic laws fails to assure that they would not face future injury.

**[3]** In sum, we conclude that the district court did not clearly err in finding that the threatened constitutional injury was likely to occur again, and thus, there was no error in the determination that the Plaintiffs had standing to pursue equitable relief as to their Fourth Amendment claims.

We need not address whether Somos America, an organization, met the requirements for associational standing. "The general rule applicable to federal court suits with multiple

plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others." *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993).

B.

We next turn to the Defendants' claims that we should exercise our pendent jurisdiction to review the district court's decision to certify the plaintiff class. We agree that whether the class was appropriately certified bears on our ability to review the class-wide injunction in this interlocutory appeal. As we have explained before, where an injunction provides class-wide relief, "effective review of the injunction requires review of the class certification." *Paige v. California*, 102 F.3d 1035, 1039 (9th Cir. 1996).

**[4]** But the Defendants do not challenge the district court's class certification itself; rather, they contend that certification of the class must be reversed and remanded because (1) the district court erroneously concluded that the Defendants may not detain persons based only on a reasonable suspicion that they may be unlawfully present in the United States, and (2) the district court erred in holding that the Plaintiffs have standing to seek injunctive relief. We address the former claim as we consider the preliminary injunction below. As to the latter claim, we have already concluded that the district court correctly determined that the Plaintiffs had Fourth Amendment standing. Thus, while class certification may be appropriately reviewed under a pendent jurisdiction theory, we need not go into any greater detail at this time as to the district court's class-certification analysis. In any event, as the district court recognized, class certification is subject to amendment at any time before final judgment. Accordingly, complete review of the class certification order is best had once a final judgment has been entered.

**[5]** Mindful of the restraint that we must exercise in determining the scope of our pendent jurisdiction, we conclude that

no other issue the Defendants raise in this interlocutory appeal is "inextricably intertwined with" or "necessary to ensure meaningful review" of the preliminary injunction decision.

## IV.

We turn now to our consideration of the preliminary injunction issued by the district court. We review a district court's preliminary injunction for an abuse of discretion. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012). " 'Under this standard, [a]s long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case.' " *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011) (alteration in original), *quoting Dominguez v. Schwarzenegger*, 596 F.3d 1087, 1092 (9th Cir. 2010).

**[6]** To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126-27 (9th Cir. 2009) (abandoning the prior preliminary injunction test and applying *Winter*). The district court's Order granted "the certified class . . . partial injunctive relief enjoining [the] Defendants from detaining any person based solely on knowledge, without more, that the person is in the country without lawful authority." We now determine whether, under the *Winter* factors, the district court abused its discretion entering this preliminary injunction prohibiting the Defendants from detaining individuals solely because they are unlawfully present in the United States.

## A.

We first conclude that the Plaintiffs were likely to succeed on their claim that without more, the Fourth Amendment does

not permit a stop or detention based solely on unlawful presence. Absent probable cause to arrest, a law enforcement officer may conduct an investigatory stop "when [that] police officer reasonably suspects that the person apprehended is committing or has committed a crime." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). The Supreme Court has explained that the investigatory-stop standard is met in the traffic-stop setting "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *Id.* at 327. Nevertheless, a detention beyond the duration of the initial traffic stop must be supported independently by reasonable suspicion of criminality. *Id.* at 333; *see also United States v. Mendez*, 476 F.3d 1077, 1080-81 (9th Cir. 2007). Accordingly, possible criminality is key to any *Terry* investigatory stop or prolonged detention. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968). Absent suspicion that a "suspect is engaged in, or is about to engage in, criminal activity," law enforcement may not stop or detain an individual. *United States v. Sandoval*, 390 F.3d 1077, 1080 (9th Cir. 2004).

We have long made clear that, unlike illegal entry, mere unauthorized presence in the United States is not a crime. *See Martinez-Medina v. Holder*, 673 F.3d 1029, 1036 (9th Cir. 2011) ("Nor is there any other federal criminal statute making unlawful presence in the United States, alone, a federal crime, although an alien's willful failure to register his presence in the United States when required to do so is a crime, and other criminal statutes may be applicable in a particular circumstance." (citation omitted)); *Gonzales v. City of Peoria*, 722 F.2d 468, 476-77 (9th Cir. 1983) (explaining that illegal presence is "only a civil violation"), *overruled on other grounds by Hodgers-Durgin*, 199 F.3d 1037. The Supreme Court recently affirmed that, "[a]s a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona v. United States*, 132 S. Ct. at 2505.

Here, the district court enjoined the Defendants from detaining individuals based solely on reasonable suspicion or

knowledge that a person was unlawfully present in the United States. The Defendants acknowledge that, although they previously had authority under section 287(g) of the Act to enforce federal civil immigration law, they no longer have authority to do so except in the jail context. Accordingly, if the Defendants are to enforce immigration-related laws, they must enforce only immigration-related laws that are criminal in nature, which they are permitted to do even without section 287(g) authority. *See Gonzales*, 722 F.2d at 475 (holding that "federal law does not preclude local enforcement of the criminal provisions" of federal immigration law). That enforcement must be consistent with the Fourth Amendment requirement that a *Terry* investigative stop be premised on criminality. Thus, because mere unauthorized presence is not a criminal matter, suspicion of unauthorized presence alone does not give rise to an inference that criminal activity is "afoot." *Terry*, 392 U.S. at 30. Although we have recognized that "illegal presence may be some indication of illegal entry," *Martinez-Medina*, 673 F.3d at 1035 (internal quotation marks omitted), unlawful presence need not result from illegal entry. For example, an individual may have entered the country lawfully, but overstayed his or her visa. *See Gonzales*, 722 F.2d at 476. In any event, nothing in *Martinez-Medina* suggests that presence *alone* is sufficient to justify a stop by the Defendants' officers who are not empowered to enforce civil immigration violations.

[7] While the seizures of the named plaintiffs based on traffic violations may have been supported by reasonable suspicion, any extension of their detention must be supported by additional suspicion of criminality. Unlawful presence is not criminal. Nor does illegal presence, without more, give rise to reasonable suspicion of violation of Arizona's human smuggling statute, Ariz. Rev. Stat. § 13-2319, as the Defendants maintain. That statute provides: "It is unlawful for a person to intentionally engage in the smuggling of human beings for profit or commercial purpose." *Id.* § 13-2319(A). It defines "smuggling of human beings" as:

> the transportation, procurement of transportation or use of property or real property by a person or an entity that knows or has reason to know that the person or persons transported or to be transported are not United States citizens, permanent resident aliens or persons otherwise lawfully in this state or have attempted to enter, entered or remained in the United States in violation of law.

*Id.* § 13-2319(F)(3). Absent any reason to suspect a profit or commercial purpose, the unlawful presence in the country of one person in an automobile, without more, does not give rise to reasonable suspicion that the driver or occupants are violating the human smuggling statute.[1] We therefore conclude that the Plaintiffs were likely to succeed on the merits of the Fourth Amendment argument that the Defendants may not detain individuals solely because of unlawful presence.

The Defendants assert that the district court's Fourth Amendment injunction rests on incorrect conclusions of law: that the district court employed an "all-the-elements" test and/or used a "divide-and-conquer" strategy in concluding that its injunction was appropriate. The district court, however, expressly identified the correct "totality of the circumstances" test in its Fourth Amendment analysis when arriving at its preliminary injunction decision. Indeed, the district court explained that "[i]f the totality of the circumstances do[es] not provide reasonable suspicion that a person is about to commit or is committing a crime, then [the Defendants' officers] cannot stop the person." To the extent that portions of the district court's reasoning leading up to the preliminary injunction could be read to suggest that the district court departed from the well-established "totality of the circumstances" test, we emphasize that we are reviewing only the content of the preliminary injunction itself, not the reasoning that led to it. Under that narrow review, we are convinced that the district

---

[1] The validity of section 13-2319 is not challenged in this litigation.

court did not abuse its discretion in determining likely success on the merits.

### B.

**[8]** We now turn to the next part of the preliminary injunction test: irreparable harm. It is well established that the deprivation of constitutional rights "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Defendants' representations during the summary judgment hearing, reasonably interpreted, demonstrate that the Defendants operated under the impression that they have authority to detain individuals solely because of their immigration status—a purely civil matter. From those representations, it was reasonable for the district court to conclude that the Plaintiffs faced a real possibility that they would again be stopped or detained and subjected to unlawful detention on the basis of their unlawful presence alone. Accordingly, there was no abuse of discretion in concluding that the Plaintiffs faced irreparable harm in the form of a deprivation of constitutional rights absent a preliminary injunction.

### C.

**[9]** Furthermore, there was no abuse of discretion in the district court's determination that the equities favor issuance of a narrow, limited preliminary injunction. The Defendants have not established that they will be harmed if this injunction is permitted to stand while the district court reaches a final judgment on the merits. The Defendants repeatedly represented during oral argument—in contradiction to their representations to the district court during the summary judgment hearing—that they do not detain individuals based only on immigration status, nor do they desire to do so. The Defendants cannot be harmed by an order enjoining an action they will not take. Further, the district court's injunction is very narrow and does "not enjoin[ ] [the Defendants] from enforcing valid state laws, or detaining individuals when officers

have reasonable suspicion that individuals are violating a state criminal law." Thus, the Defendants' ability to enforce local and even federal criminal law is not impaired by the injunction. Accordingly, we conclude that the district court did not abuse its discretion in concluding that the balance of equities tip in the Plaintiffs' favor.

## D.

**[10]** Likewise, the Defendants make no argument that an injunction is not in the public interest. We agreed in *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002), that " 'it is always in the public interest to prevent the violation of a party's constitutional rights.' " *Id.* at 974, *quoting G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

**[11]** In sum, we hold that the district court did not abuse its discretion in granting preliminary injunctive relief.

## V.

We applaud how the district court has expedited this sensitive case and moved with appropriate speed towards a final disposition. We have long

> emphasize[d] the ways in which review of an order granting or denying a preliminary injunction differs from review of an order involving a permanent injunction because we are persuaded that in some cases, parties appeal orders granting or denying motions for preliminary injunctions in order to ascertain the views of the appellate court on the merits of the litigation. Because of the limited scope of our review of the law applied by the district court and because the fully developed factual record may be materially different from that initially before the district court, our disposition of appeals from most pre-

liminary injunctions may provide little guidance as to the appropriate disposition on the merits. Furthermore, in many cases, appeal of district courts' preliminary injunctions will result in unnecessary delay to the parties and inefficient use of judicial resources. We think it likely that this case, for instance, could have proceeded to a disposition on the merits in far less time than it took to process this appeal. Furthermore, our disposition of this appeal will affect the rights of the parties only until the district court renders judgment on the merits of the case, at which time the losing party may again appeal.

*Sports Form, Inc. v. United Press Int'l, Inc*, 686 F.2d 750, 753 (9th Cir. 1982). Here, it appears that the district court heeded our direction to proceed to trial and otherwise move towards a final judgment in this case without waiting for our interlocutory review. As a result, final judgment is now imminent and we need only exercise very limited review at this time. If there is an appeal from the trial court's final judgment, this panel will retain jurisdiction to hear any subsequent appeal. At that point, we may appropriately consider the broader claims that the Defendants raise in this appeal, if necessary.

**AFFIRMED**.