**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MANUEL DE JESUS ORTEGA MELENDRES; JESSICA QUITUGUA RODRIGUEZ; DAVID RODRIGUEZ; VELIA MERAZ; MANUEL NIETO, JR.; SOMOS AMERICA, *Plaintiffs-Appellees*, | No. 16-16661 D.C. No. 2:07-cv-02513-GMS |
| UNITED STATES OF AMERICA, *Intervenor-Plaintiff-Appellee*, | OPINION |
| v. | |
| MARICOPA COUNTY, *Defendant-Appellant*, | |
| and | |
| JOSEPH M. ARPAIO, *Defendant.* | |

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, District Judge, Presiding

Argued and Submitted March 15, 2018
San Francisco, California

Filed July 31, 2018

Before:  J. Clifford Wallace, Susan P. Graber,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Wallace

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's second supplemental injunction and victim compensation order in a class action alleging that the Maricopa County Sheriff's Office racially profiled Latino drivers and passengers under the guise of enforcing federal and state immigration laws.

The panel noted that there have been multiple appeals in this case and that the district court entered its second supplemental injunction after discovering that the Sheriff's Office had deliberately violated the court's previous injunction and committed new constitutional violations.

The panel held that the district court did not abuse its discretion in formulating the terms of the second supplemental injunction, intended to remedy defendants' misconduct and protect plaintiffs' constitutional rights. The panel was satisfied that the challenged provisions flowed from Sheriff Office's violations of court prior orders, constitutional violations, or both. The panel rejected the

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

County's contention that it was not a proper party to this action because the Sheriff's Office and its sheriff do not act on behalf of the County. The panel noted that it had already—thrice—rejected this argument. Finally, the panel rejected the County's contention that it had no authority under Arizona law, Arizona Revised Statute § 11-981(A)(2), to fund compliance with an injunction that arises from willful misconduct. The panel held that even assuming, without deciding that the County's interpretation of the Arizona statute was correct, a state statute prohibiting payment for valid federal court-ordered remedies does not excuse a defendant from complying with those remedies. In addition, the panel noted that the statute that the County cited would, at most, prevent payment from insurance or self-insurance funds. The County failed to explain how this law would preclude it from using other types of funds to comply with the district court's orders, such as those it uses to fund its normal operations.

## COUNSEL

Richard Walker (argued), Walker & Peskind PLLC, Scottsdale, Arizona, for Defendant-Appellant.

Andre Segura (argued), ACLU Foundation of Texas, Houston, Texas; Kathleen E. Brody and Brenda Muñoz Furnish, ACLU Foundation of Arizona, Phoenix, Arizona; Cecilia D. Wang and Katrina L. Eiland, ACLU Foundation, San Francisco, California; Stanley Young, Covington & Burling LLP, Redwood Shores, California; Anne Lai, Irving, California; Julia Gomez, Mexican American Legal Defense and Educational Fund, Los Angeles, California; for Plaintiffs-Appellees.

John M. Gore (argued), Acting Assistant Attorney General; Thomas E. Chandler, Attorney; Appellate Section, Civil Rights Section, United States Department of Justice, Washington, D.C.; for Intervenor-Plaintiff-Appellee.

## OPINION

WALLACE, Circuit Judge:

Maricopa County appeals from the district court's second supplemental injunction and victim compensation order. We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.

I.

There have been multiple appeals in this case. *Melendres v. Maricopa County*, 815 F.3d 645 (9th Cir. 2016) (*Melendres III*); *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) (*Melendres II*); *Melendres v. Arpaio* (*Melendres I*), 695 F.3d 990 (9th Cir. 2012). We recount only the facts necessary to dispose of this appeal.

Plaintiffs filed this class action alleging that the Maricopa County Sheriff's Office (MCSO) racially profiled Latino drivers and passengers under the guise of enforcing federal and state immigration laws. *Melendres III*, 815 F.3d at 648. Following a bench trial, the district court found that MCSO's conduct violated Plaintiffs' constitutional rights. *Melendres v. Arpaio*, 989 F. Supp. 2d 822, 895 (D. Ariz. 2013). The district court entered an injunction, ordering MCSO to take a variety of remedial measures including "appointing an independent monitor to assess and report on MCSO's compliance with the injunction, increasing the training of MCSO employees, improving traffic-stop

documentation, and developing an early identification system for racial-profiling problems." *Melendres III*, 815 F.3d at 648, citing *Melendres II*, 784 F.3d at 1267. We affirmed the injunction, except for "certain provisions dealing with internal investigations and reports of officer misconduct," which we remanded for the district court to tailor "more precisely to the constitutional violations at issue." *Melendres III*, 815 F.3d at 648, citing *Melendres II*, 784 F.3d at 1267. We also dismissed MCSO and substituted Maricopa County (the County) in its place. *Melendres II*, 784 F.3d at 1260.

The district court later discovered that MCSO had deliberately violated the injunction and committed new constitutional violations. After twenty-one days of contempt proceedings, the district court found that MCSO's sheriff and his command staff knowingly failed to implement the injunction, deliberately withheld evidence in violation of court orders, and "manipulated all aspects" of the internal affairs process to minimize discipline on MCSO deputies and command staff. *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2016 WL 3996453, at *1−2 (D. Ariz. July 26, 2016).

For example, the district court found that MCSO "detained and turned over [to federal authorities] at least 157 persons whom it could not charge for violating any state or federal laws" in violation of the injunction. *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2016 WL 2783715, at ¶ 157 (D. Ariz. May 13, 2016). The district court also found that MCSO employees had failed to produce personal property seized from members of the Plaintiff class in violation of court orders. *Id.* at *29. A search of a former MCSO officer's garage "uncovered more than 1600 items," including approximately 500 drivers' licenses, "tons" of

license plates, vehicle registrations, cell phones, wallets, and other items of personal property. *Id.* at ¶¶ 214, 278. MCSO later collected at least 1,665 more government-issued identification cards (IDs). *Id.* at ¶¶ 287–94. MCSO admitted that "a significant number of its deputies seized IDs and other personal property as 'trophies' and has further admitted that it destroyed much of that property." *Id.* at ¶ 852. The district court also inferred from the "absence of complaints" about the property, that "such complaints were not properly transmitted, processed, or investigated." *Id.*

Finally, the district court found that MCSO employees "did not make a good faith effort to fairly and impartially investigate and discipline misconduct." *Id.* at \*1. They "initiated internal investigations designed only to placate Plaintiffs' counsel," "named disciplinary officers who were biased in their favor and had conflicts," "promulgated special inequitable disciplinary policies pertaining only to *Melendres*-related internal investigations," "delayed investigations so as to justify the imposition of lesser or no discipline," and "asserted intentional misstatements of fact to their own investigators and to the court-appointed Monitor." *Id.* The district court explained, "Ultimately, few persons were investigated; even fewer were disciplined. The discipline imposed was inadequate. The only person who received a suspension—for one week—was also granted a raise and a promotion." *Id.*

The district court entered a second supplemental injunction to remedy the misconduct and protect Plaintiffs' constitutional rights. *Melendres*, 2016 WL 3996453, at \*10. Among other things, the injunction revised MCSO's disciplinary matrix, conflict of interest and whistleblower policies, training requirements for internal affairs staff, and complaint intake and tracking procedures. *Id.* at ¶¶ 163–260.

The injunction also vested the independent monitor with the authority to supervise and direct internal investigations related to the Plaintiff class and to inquire and report on other internal investigations. *Id.* ¶¶ 276, 289. It ordered the appointment of an independent investigator with disciplinary authority to investigate and decide discipline for internal investigations deemed invalid by the court. *Id.* ¶¶ 296, 320. The district court also directed the County to implement a victim compensation program for individuals injured by MCSO's violations of the first injunction. *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2016 WL 4415038, at *1 (D. Ariz. Aug. 19, 2016).The County timely appealed.

## II.

We review the district court's factual findings for clear error and its legal conclusions *de novo*. *Melendres II*, 784 F.3d at 1260. We review the scope and terms of an injunction for an abuse of discretion. *Id.*

## III.

The County argues that the district court failed to tailor the terms of the second supplemental injunction to remedy the constitutional and court order violations it found. It also argues that the injunction violates federalism principles, which we construe as a variant of the first argument. The County asks that we strike the second supplemental injunction "in its entirety." We decline to do so.[1]

---

[1] Plaintiffs argue that the sheriff consented to certain provisions in the second supplemental injunction by submitting a joint proposal with Plaintiffs pursuant to a court order, and that the County has waived any challenge to those provisions on appeal. We rejected a similar argument

"We have long held that injunctive relief 'must be tailored to remedy the specific harm alleged.'" *Melendres II*, 784 F.3d at 1265, quoting *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). Federalism principles make tailoring particularly important where, as here, plaintiffs seek injunctive relief against a state or local government. *See Rizzo v. Goode*, 423 U.S. 362, 378−79 (1976). However, a district court has broad discretion to fashion injunctive relief. *Melendres II*, 784 F.3d at 1265. The court exceeds that discretion "only if [the injunctive relief] is 'aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation.'" *Id.*, quoting *Milliken v. Bradley*, 433 U.S. 267, 282 (1977). Further, where the enjoined party has a "history of noncompliance with prior orders," and particularly where the trial judge has "years of experience with the case at hand," we give the court a "great deal of flexibility and discretion in choosing the remedy best suited to curing the violation." *Melendres II*, 784 F.3d at 1265 (citations omitted).

Here, the County specifically identifies only a handful of provisions in the second supplemental injunction as allegedly problematic. First, it cites the provision that "grant[s] the Monitor 'full access to all MCSO internal affairs investigations,'" which the County says "reach[es] beyond matters directly affecting the interests of the Plaintiff class." But the County fails to cite the rest of that provision,

---

in *Melendres II*, 784 F.3d at 1264, and do so now again. Although MCSO did not expressly reserve appeal rights in the proposal, MCSO and the district court understood that the proposal was not an intentional relinquishment of appeal rights. Further, the County stated in response to the district judge's findings of fact that it intended to retain all of its appeal rights as to those findings and their implications.

which says that "[w]hile the Monitor can assess all [MCSO] internal affairs investigations . . . to evaluate their good faith compliance with this Order, the Monitor *does not* have authority to direct or participate in investigations of or make any orders as to matters that do not [involve members of the Plaintiff class]." *Melendres*, 2016 WL 3996453, ¶¶ 162, 292 (emphasis added).

Second, the County complains that the sheriff does not have "*any* authority" over matters related to the Plaintiff class until the district court decides that MCSO uniformly investigates misconduct and imposes fair discipline at all levels of command. Again, the County misreads the cited provision. The injunction states the "Court will not return the *final* authority to the Sheriff" until such time, not that the sheriff has no authority. *Melendres*, 2016 WL 3996453, ¶ 290 (emphasis added). The sheriff "may exercise" authority to direct and resolve matters related to the Plaintiff class, subject to override by the monitor. *Melendres*, 2016 WL 3996453, ¶ 282.

Third, the County argues that the district court gave itself "complete editorial control" over policies related to misconduct investigations, employee discipline, and grievances, including "all misconduct investigations of MCSO personnel." The cited provision, however, actually directs the sheriff in the first instance to review and revise the policies to add terms enumerated by the court. *Id.* ¶¶ 165−67. Only if the sheriff, the monitor, and Plaintiffs disagree on the sheriff's proposal will the court resolve the dispute. *Id.* ¶¶ 165−66.

Finally, the County cites the provision that directs its internal affairs department to move to an office space separate from MCSO's facilities. *Id.* ¶ 198. The district court

explained the move would "promote independence and the confidentiality of investigations." *Id.*

In each instance, we are satisfied that the challenged provisions flow from MCSO's violations of court orders, constitutional violations, or both. *See Melendres II*, 784 F.3d at 1265. Each challenged provision addresses the internal affairs and employee discipline process, which the district court found based on ample evidence MCSO had "manipulated" to "minimize or entirely avoid imposing discipline on MCSO deputies and command staff." *Melendres*, 2016 WL 3996453, at \*1. The district court explained that it "would have entered injunctive relief much broader in scope" had it known about "the evidence withheld by the MCSO and the evidence to which it led" when imposing the first injunction. *Id.* at \*2. MCSO's repeated bad-faith violations of court orders and Judge Snow's seven years of experience with this case at the time he issued the challenged orders lead us to believe that the district court chose the remedy best suited to cure MCSO's violations of court orders and to supplement prior orders that had proven inadequate to protect the Plaintiff class. *See Melendres II*, 784 F.3d at 1265.

The County relies on *Rizzo v. Goode*, 423 U.S. at 378−79, to argue that the injunction violates federalism principles. We reject this argument. In *Rizzo*, the Supreme Court "found no 'pattern' of police misconduct sufficient to justify the detailed affirmative injunction" against a city police department. *LaDuke v. Nelson*, 762 F.2d 1318, 1325 n.10 (9th Cir. 1985), quoting *Rizzo*, 423 U.S. at 374. By contrast, here the district court found "MCSO's constitutional violations [were] broad in scope, involve[d] its highest ranking command staff, and flow[ed] into its management of internal affairs investigations." *Melendres*,

2016 WL 3996453, at *1. The district court properly held that those characteristics distinguish this case from *Rizzo*. *Id.* at *5–6. In addition, of the four provisions that the County alleges violate federalism principles, it fails to discuss any of them or articulate how they are overbroad. We will not manufacture the County's arguments for it. *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

The County also contends that the injunction constitutes an abuse of discretion in light of the costs of the remedies it imposes. We disagree. "[F]ederal courts have repeatedly held that financial constraints do not allow states to deprive persons of their constitutional rights." *Stone v. City & County of San Francisco*, 968 F.2d 850, 858 (9th Cir. 1992). Here, the "less intrusive remedies" in the first injunction "were not effective due to Defendants' deliberate failures and manipulations." *Melendres*, 2016 WL 3996453, at *6. Therefore, the additional costs imposed by the second supplemental injunction were necessary to ensure MCSO's compliance with court orders.

Finally, the County argues that the election of a new sheriff and other MCSO personnel changes render unnecessary "the severe and onerous restrictions on managerial discretion" contained in the order. Since this appeal was filed, the district court has offered to modify its prior orders, where appropriate, to accommodate these changed circumstances, and has already granted some requests by the new sheriff to amend the original injunction. To the extent that additional changes are appropriate, we leave it to the district court, which has overseen this litigation for many years, to consider those changes in the first instance.

The district court did not abuse its discretion in formulating the terms of the second supplemental injunction.

IV.

We turn now to the County's contention that it is not a proper party to this action because MCSO and its sheriff do not act on behalf of the County. We have already—thrice—rejected this argument. In *Melendres II*, we substituted the County as a defendant in this action in the place of MCSO, relying on a state court case holding that MCSO lacked separate legal status from the County. *Melendres II*, 784 F.3d at 1260, citing *Braillard v. Maricopa County*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010). In *Melendres III*, we elaborated on the County's liability for MCSO's actions. We explained that "under the Supreme Court's decisions interpreting 42 U.S.C. § 1983, 'if the sheriff's actions constitute county policy, then the county is liable for them.'" 815 F.3d at 650, quoting *McMillian v. Monroe County*, 520 U.S. 781, 783 (1997). Applying this rule, we concluded, "Arizona state law makes clear" that the MCSO sheriff's "law-enforcement acts" constitute County policy because he has "final policymaking authority." *Melendres III*, 815 F.3d at 650. We recently revisited the issue again, holding that the sheriff acts as a final policymaker for the County on law-enforcement matters. *United States v. County of Maricopa*, 889 F.3d 648, 651 (9th Cir. 2018). Our prior decisions are binding on us now. *Gonzalez* v. *Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc). The County is a proper party to this action.

V.

Finally, the County argues that it has no authority under Arizona law to fund compliance with an injunction, such as this one, that arises from willful misconduct. Its argument is premised entirely on a state law, Arizona Revised Statute § 11-981(A)(2), that permits payment from insurance or self-insurance funds for employee conduct "within the scope of employment or authority." By negative inference, the

County argues the statute *prohibits* such payments for employee conduct *outside* the scope of employment. But even assuming, without deciding, that this reading were correct, and assuming without deciding that the acts of MCSO's employees were outside the scope of employment or authority, this argument fails. A state statute prohibiting payment for valid federal court-ordered remedies does not excuse a defendant from complying with those remedies. *Hook v. Ariz. Dep't of Corrs.*, 107 F.3d 1397, 1402−03 (9th Cir. 1997). In addition, the statute that the County cites would, at most, prevent payment from insurance or self-insurance funds. Nowhere does the County explain how this law would preclude it from using other types of funds to comply with the district court's orders, such as those it uses to fund its normal operations.

In any case, the County previously admitted its responsibility to remedy harm from MCSO's intentional misconduct in *Melendres III*. 815 F.3d at 650. There, the County "concede[d] that it [was] required, by Arizona state statute, to provide funding for the massive changes the district court has imposed" and "conceded that even if we had never substituted it in place of MCSO, it would have nonetheless had to bear the financial costs associated with complying with the district court's injunction." *Id.* It cannot change its position now. *See Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600−01 (9th Cir. 1996).

State law does not bar the County from funding the injunction.

## VI.

The district court's orders are **AFFIRMED.**

The County shall bear Plaintiffs' costs of appeal. Fed. R. App. P. 39(a)(2).