Cheryl **AICHELE**, et al., Plaintiffs,

v.

**CITY OF LOS ANGELES,**
**et al., Defendants.**

**Case No. CV 12-10863 DMG (FFMx)**

United States District Court,
C.D. California.

Signed 08/26/2013

David S. McLane, Barrett S. Litt, Kaye McLane Bednarski and Litt LLP, Dan Stormer, Lincoln Wolf Ellis, Hadsell Stormer Richardson and Renick LLP, Pasadena, CA, Carol A. Sobel, Carol A. Sobel Law Offices, Santa Monica, CA, Catherine Elizabeth Sweetser, Paul L. Hoffman, Schonbrun Seplow Harris Hoffman and Harrison LLP, Venice, CA, Colleen Flynn, Law Office of Colleen Flynn, Los Angeles, CA, for Plaintiffs.

Justin W. Clark, Matthew Philip Allen, Nathan A. Oyster, Paul B. Beach, Raymond W. Sakai, Lawrence Beach Allen and Choi PC, Glendale, CA, Christian R. Bojorquez, Los Angeles City Attorney's Office, Cory M. Brente, Office of the Los Angeles City Attorney, Denise Christine Zimmerman, City Attorneys Office, Elizabeth Anne Mitchell, Office of City Attorney, Los Angeles, CA, for Defendants.

## ORDER RE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
### [DOC. # 62]

DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

This matter is before the Court on Plaintiffs' motion for class certification [Doc. # 62]. The Court held a hearing on August 23, 2013. The Court has duly considered the arguments and evidence presented in support of and in opposition to the motion. For the reasons set forth below, the motion is **GRANTED.**

### I.

### *PROCEDURAL HISTORY*

Plaintiffs, Cheryl Aichele, Jonathan Alexander, Carina Clemente, Michael Prysner, and James Weitz, commenced this action on December 20, 2012, individually and as class representatives, against Defendants City of Los Angeles ("City"), County of Los Angeles ("County"), Mayor Antonio Villaraigosa, Los Angeles Police Department ("LAPD") Chief Charlie Beck, and Does 1 through 10.[1] [Doc. # 1.]

---

1. Defendants City, Beck, and Villaraigosa are collectively referred to as "the City Defendants."

Plaintiffs filed a First Amended Complaint ("FAC") on April 11, 2013. [Doc. # 9.] The FAC seeks damages and injunctive relief for the following claims: (1) 42 U.S.C. § 1983 for violation of the First Amendment to the United States Constitution and the California Constitution, Article I, §§ 2, 3; (2) 42 U.S.C. § 1983 for violation of the Fourth Amendment to the United States Constitution and the California Constitution, Article I, § 7; (3) 42 U.S.C. § 1983 for violation of the Fourteenth Amendment to the United States Constitution and the California Constitution Article I, § 7; (4) 42 U.S.C. § 1983 for violation of the Fourteenth Amendment to the United States Constitution and the California Constitution Article I, § 13; (5) false arrest and/or false imprisonment; (6) violation of Cal. Civ.Code § 52.1; and (7) negligence. (*Id.*)

On July 10, 2013, Plaintiffs filed the instant motion for class certification.

## II.

### *FACTUAL BACKGROUND*

#### A. *Plaintiff Class and Sub-classes*

Pursuant to Rule 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs move to certify the following classes and sub-classes.[2]

Proposed Rule 23(b)(3) class and sub-classes:

*Damages Class*: "All persons who were arrested in or around the vicinity of City Hall on November 30, 2011, in connection with allegedly participating in the Occupy protest and/or for allegedly failing to disperse." (Approximately 296 individuals; proposed class representatives: All Named Plaintiffs.)

*Vicinity Sub–Class*: "All persons who were arrested in or around the vicinity of City Hall on November 30, 2011, although they were not participating in the Occupy protest at Los Angeles City Hall at all, or had removed themselves from it at the direction of the police." (Approximately 60 individuals; proposed class representative: James Weitz.)

*OR Sub–Class*: "All persons who were arrested in or around the vicinity of City Hall on November 30, 2011; who had no objective disqualifications from entitlement to release OR[3] pursuant to Penal Code § 853.6; and who were not released OR before or immediately after the booking process was completed." (Approximately 250 individuals; proposed class representatives: All Named Plaintiffs.)

*City Bus Sub–Class*: "All persons who were arrested in or around the vicinity of City Hall on November 30, 2011, and who were transported on buses driven to the LAPD's [Metropolitan Detention Center ("MDC")]." (Approximately 200 individuals; proposed class representatives: Jonathan Alexander, Michael Prysner, Carina Clemente.)

*County Bus Sub–Class*:[4] "All persons who were arrested in or around the vicinity of City Hall on November 30, 2011, and who were transported to Van Nuys jail on buses driven by members of the [Los Angeles County Sheriff's Department ("LASD") ]." (Approximately 90 individuals; proposed class representatives: Cheryl Aichele, James Weitz.)

*Proposed Rule 23(b)(2) class*:

*Injunction Class*: "All individuals who were denied, and may in the future be denied, release on their own recognizance pursuant to Penal Code § 853.6, who have no objective disqualifications from entitlement to release OR pursuant to Penal Code § 853.6, without a particularized and

---

**2.** Plaintiffs move for certification under Rule 23(b)(1) in the alternative. Because the Court finds that certification under Rule 23(b)(2) and 23(b)(3) is appropriate, it need not reach Rule 23(b)(1) certification.

**3.** Throughout this order, the Court refers to release on one's own recognizance as "OR" or "OR release."

**4.** The County Bus Sub–Class is the only group alleging claims against the County. The Damages Class, remaining Sub–Classes, and the Injunction Class seek relief from the City Defendants only. (*See* Decl. of Nathan Oyster ¶¶ 4–5 [Doc. # 72].)

individualized determination that they are not eligible for OR release."

(Notice of Mot.) [5]

## B. *Class Representatives*

Cheryl Aichele, Jonathan Alexander, Carina Clemente, Michael Prysner, and James Weitz seek appointment as class representatives. (FAC ¶¶ 23–27.) All of the Named Plaintiffs participated in or were otherwise present at the "Occupy Los Angeles" ("Occupy") protests in the fall of 2011. (FAC ¶ 5.) Along with other protestors, they maintained tents in round-the-clock vigils on the lawn of City Hall starting around October 1, 2011. (*Id.* ¶¶ 5–6.) According to Plaintiffs, in mid-October 2011, the City passed a resolution in support of the Occupy protest, and city officials, including Mayor Villaraigosa, made public statements and gestures to demonstrate support for the protests. (*Id.* ¶¶ 6–7.)

On November 25, 2011, Defendants announced by televised press conference that Plaintiffs and other protestors would no longer be allowed to engage in expressive activities at City Hall. (FAC ¶ 15.) At approximately 12:00 a.m. on November 30, 2011, representatives of the City Defendants executed a plan to break up the protest by essentially surrounding City Hall. (*Id.* ¶ 17.) Officers advised that anyone who did not want to be arrested should leave the City Hall lawn and stand in a particular location, but individuals who complied with this order were nevertheless arrested. (*Id.*) Other individuals were "indiscriminately arrested," including individuals who were several blocks from the location and had not been present for any dispersal order. (*Id.*)

Plaintiffs allege that they were subjected to unlawful arrest and substandard treatment during their detention. A brief summary of the specific facts pertaining to each proposed class representative follows.

**Aichele** participated in the Occupy protest. (Decl. of Cheryl Aichele ¶ 2 [Doc. # 66].) Aichele did not hear any amplified dispersal order when officers arrived on November 30, 2011, although she did hear an announcement that was "extremely garbled and could not be understood." (*Id.* ¶ 4.) Eventually, several officers gave a dispersal order directly to Aichele and a small group of protestors with whom she was sitting. (*Id.*) Aichele was arrested and handcuffed with tight plastic ties behind her back. (*Id.* ¶ 5.) She was placed on a bus and driven to the Van Nuys jail. She was held on the bus for at least six hours, and during this time, she and the other arrestees were not given food or water and were not allowed to use the bathroom. (*Id.*) Aichele observed multiple individuals asking to have their handcuffs loosened or to use the bathrooms, but their requests were ignored.[6] (*Id.*) Several arrestees urinated on themselves while on the bus. (*Id.*) Aichele has no criminal history, but she was denied OR release. (*Id.* ¶ 6.) She was never charged with any crime based on the November 30, 2011 arrest. (*Id.* ¶ 7.)

**Alexander** is an employee of KPFK Pacific Radio in Los Angeles who was covering the Occupy protests in November 2011. (Decl. of Jonathan Alexander ¶ 2 [Doc. # 66].) He was present at City Hall on the night of November 29, 2011. (*Id.*) When the arrests began, Alexander remained at the site and was arrested sometime after midnight on November 30, 2011. (*Id.*) Alexander was handcuffed in tight plastic handcuffs that restricted circulation and caused pain. (*Id.*) At MDC, Alexander and the other arrestees were transferred to a parking garage adjacent to the jail where they were held, still handcuffed, for hours. (*Id.*) They were not allowed to use the bathroom and were not given food or water. (*Id.*) Alexander was denied the opportunity to be released OR despite the fact that he has no recent criminal history. (*Id.* ¶ 5.) He could not post

---

5. Plaintiffs' wording of the OR Sub–Class, City Sub–Class, and County Sub–Class is slightly different elsewhere in its opening brief. (Mot. at 6–7.)

6. The County objects to the statements, "I observed multiple individuals ask the deputies to loosen their handcuffs," and "I observed multi-

ple people request to use a bathroom" as hearsay. [Doc. # 73.] The objections are overruled as it does not appear that the questions are being offered to prove the truth of any matter asserted, but rather to show that such questions were asked and their effect on Aichele and Defendants.

bond, and as a result he remained in jail for approximately 60 hours before being released on December 2, 2011. (*Id.* ¶ 6.) Alexander was initially charged with a non-violent misdemeanor offense, but the charges were eventually dismissed. (*Id.*)

**Clemente** participated in the Occupy protest. (Decl. of Carina Clemente ¶ 2 [Doc. # 66].) On November 30, 2011, she did not hear an amplified dispersal order but heard a garbled announcement that could not be understood. (*Id.*) She sat with others on the lawn and waited to be arrested. (*Id.*) During the course of her arrest, an officer pinched her nipple and inner thigh as a "pain compliance" technique, a technique that, based on conversations with other arrestees, she believes was experienced widely by female arrestees. (*Id.*) Clemente was transported to the MDC, where she was questioned before being transported to Van Nuys jail. (*Id.* ¶ 4.) Except during questioning, she was held in tight handcuffs which restricted circulation and caused bruising to her wrists. (*Id.*) She was denied the opportunity to be released OR despite the fact that she has no criminal history. (*Id.* ¶ 6.) She was held for 30 hours before posting bail to gain release, and no charges were filed against her. (*Id.* ¶¶ 6–7.)

**Prysner** is an Iraq war veteran who has engaged in anti-war organizing since completing his military service. (Decl. of Michael Prysner ¶ 2 [Doc. # 66].) He participated in the Occupy Protest and sat in the circle of non-violent protestors on the lawn when Defendants began to break up the protest. (*Id.* ¶ 3.) He did not hear an amplified dispersal order, but he heard the order given directly to the sitting group. (*Id.*) He did not resist his arrest, but he was tightly handcuffed and transported by bus to MDC. (*Id.* ¶ 5.) There, Prysner was taken off the bus and held in a parking garage for almost seven hours. (*Id.*) He and the other arrestees were not allowed to use the bathroom or have water or food. (*Id.* ¶ 6.) Prysner asked to use the bathroom repeatedly and an officer told him that he could do so if he could urinate with his hands cuffed behind his back. (*Id.*) Prysner had been previously arrested once in 2007 for participating in a protest. (*Id.* ¶ 8.) After his arrest in 2011, he was not released OR but instead posted a bail of $5000 and was not released until approximately 20 hours after his initial arrest. (*Id.* ¶ 8.) No charges were filed against him. (*Id.*)

**Weitz** is a documentary filmmaker who was present at the Occupy protest on November 29 and 30, 2011 to film the events. (Decl. of James Weitz ¶¶ 2–3 [Doc. # 66].) He did not participate in the protest. (*Id.* ¶ 3.) Weitz set up his film equipment in the vicinity of Broadway and 1st Streets. (*Id.*) From there, he observed an officer announce with a bullhorn that protestors not wishing to be arrested should move to the sidewalk near where Weitz was standing. (*Id.* ¶ 4.) Weitz moved to the sidewalk with those individuals because he did not wish to be arrested, but shortly thereafter the group was surrounded by police and arrested. (*Id.*) Weitz was handcuffed and transported by bus to Van Nuys jail. (*Id.* ¶ 5.) He estimates that he and the other arrestees were kept on the bus for four to seven hours, and during that time they were not given water or permitted to use a bathroom. (*Id.*) One female arrestee urinated in the middle of the bus after her requests to use a bathroom were ignored, and other such requests were ignored outright.[7] (*Id.*) Another female arrestee vomited on the bus as the stench of urine worsened. (*Id.*) At Van Nuys jail, Weitz was held in a group cell for about eight hours before being allowed to use a bathroom on the morning of December 1, 2011. (*Id.* ¶ 6.) Weitz was denied the opportunity to be released OR despite the fact that he has no criminal history. (*Id.* ¶ 7.) He posted bail and was released on December 2, 2011, approximately 53 hours after being arrested. (*Id.*)

### III.

### *LEGAL STANDARD*

Rule 23 provides district courts with broad discretion in making a class certification determination. *Navellier v. Sletten*, 262 F.3d

---

7. The County objects to Weitz's account of individuals asking to use the bathroom and for water as hearsay. As discussed in footnote 6, *supra*, the objection is overruled.

923, 941 (9th Cir.2001); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 345, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (recognizing that district courts "have broad power and discretion vested in them by Fed. Rule Civ. Proc. 23"). Nonetheless, a court must exercise its discretion "within the framework of Rule 23." *Navellier*, 262 F.3d at 941. A district court may certify a class only if the following prerequisites are met:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These prerequisites "ensure[ ] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011).

■ If the Rule 23(a) requirements are satisfied, a class action may be maintained pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The party seeking certification bears the burden of demonstrating that it meets the Rule 23(b) requirements. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 n. 9 (9th Cir.2009) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001)).

The Rule 23 analysis must be rigorous to ensure that its prerequisites have been satisfied, and such analysis will often require looking beyond the pleadings to issues overlapping with the merits of the underlying claims. *Dukes*, 131 S.Ct. at 2551–52.

8. Defendants also challenge the terms "complied with all police orders prior to arrest." As this

## IV.

### *DISCUSSION*

### A. *Plaintiffs May Modify the Proposed Class Definitions at This Stage*

■ Defendants first contend that Plaintiffs' motion is improper because it seeks to certify classes and sub-classes that are different from those described in the FAC. A court's order granting or denying class certification may be altered or amended at any time before final judgment. Fed.R.Civ.P. 23(c)(1)(C). The rule evinces a policy to allow modification of a class throughout litigation as is necessary to enhance the usefulness of the class-action device. *See United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir.2010) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Accordingly, Plaintiffs are not bound by the class definition articulated in their FAC and may proceed with the definitions set forth in their present motion.

### B. *The Classes Are, or Can Be, Adequately Defined*

■ A party seeking class certification must first demonstrate that an identifiable class exists. *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D.Cal.2009). While the class "need not be so ascertainable that every potential member can be identified at the commencement of the action," the definition must be precise, objective, and presently ascertainable." *Id.* (quoting *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D.Cal.1998)). Class membership may not "depend on the beliefs or state of mind of any individuals" and must be "readily susceptible to judicial determination." *Multi–Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621, 630 (C.D.Cal.2007) ("*MIWON*").

■ Defendants assert that the class and sub-classes are riddled with vague terms such as "protest," "participation," and "vicinity."[8] In the context of the definitions as a

term appears only in the FAC's proposed class, and not in any of the definitions which Plaintiffs

whole, however, these terms are not so vague that the class would not be ascertainable. The term "protest" is not vague–Defendants' own public announcements prior to the arrests demonstrate that they had been monitoring and were familiar with the Occupy activities for several weeks. (*See* Decl. of Jose Perez, Jr. ¶ 4 [Doc. # 70].) Moreover, the Damages Class and sub-classes encompass not only individuals who actually participated in the protest, but those who were arrested for "allegedly participating" as well–Defendants' arrest records will show whether individuals were arrested for offenses other than alleged participation or failure to disperse. Finally, although the term "vicinity" is somewhat imprecise, in the context of the facts of this case, the intended meaning of the term is readily ascertainable and can be further refined by the insertion of geographical boundaries. The term is obviously included to encompass individuals who obeyed police orders to move to particular locations outside of the City Hall park. Taken in context, the challenged terms are not impermissibly vague.[9] Nevertheless, the Court would prefer a definition that is more precise and less susceptible to interpretation. As discussed at the hearing, a more precise definition is as follows: "All persons who were arrested in or around the vicinity of City Hall (in the area between Los Angeles Street and Broadway Street and between Cesar Chavez Avenue and Second Street) on November 30, 2011 between the hours of midnight to 3:00 a.m. in connection with law enforcement agencies' efforts to disperse the Occupy Los Angeles protest."[10]

Defendants also attack the OR Sub–Class and the Injunction Class for their use of the phrase "who had no objective disqualifications from entitlement to release OR pursuant to Penal Code § 853.6." Defendants argue that this phrase is impermissibly vague because potential class members cannot know if they had or will have any "objective qualifications from entitlement to release OR pursuant to Penal Code § 853.6, without a particularized and individualized determination that they are not eligible for OR release." Cal.Penal Code § 853.6 permits an officer to hold a misdemeanor arrestee only through the "booking" process, unless the arrestee is subject to an exception. But the two exceptions cited by Defendants each require an individualized analysis which Plaintiffs claim was generally not performed in the context of the mass arrests: either the arrestee is unable to provide adequate personal identification (Section 853.6(i)(5)) or there exists an individualized "reasonable likelihood" that he or she would resume his alleged offenses if released (Section 853.6(i)(7)). In any event, there exist clear, objective guidelines for determining individual membership in the OR Sub–Class and the Injunction Class. Finally, Plaintiffs provide a list, obtained from Defendants' records, of nearly all of the arrestees—even if some arrestees are not class members, this list demonstrates that all class members are presently known and readily ascertainable.[11]

---

now seek to certify, the Court need not address whether these terms are impermissibly vague.

9. Defendants impliedly compare the class definitions here to those of *Vietnam Veterans Against War v. Benecke*, 63 F.R.D. 675, 679–80 (W.D.Mo. 1974), and *Koen v. Long*, 302 F.Supp. 1383, 138789 (E.D.Mo.1969). In both of those cases, the proposed class was defined by subjective concepts—persons who "wish to attend" public assembly or who are "unpopular with defendants." In contrast, the definitions here are based on the circumstances and reasons for individuals' arrests, an objectively ascertainable standard that is not dependent on any state of mind or other subjective criterion.

10. At oral argument, Plaintiffs indicated that they are not yet certain of the exact geographical boundaries of the arrest area, but they expect that these boundaries will be determined through discovery. If discovery reveals different boundaries or time frames than those articulated in this Order, the parties may request modification of the Damages Class definition.

11. Defendants object to the Supplemental Sobel Declaration and attached exhibits as violative of Local Rule 7–5(b). According to Defendants, the evidence is not rebuttal evidence and therefore should have been submitted at the time the motion was filed, not in support of Plaintiffs' Reply. The Court disagrees. In their Opposition Briefs, Defendants argue that Plaintiffs cannot satisfy the numerosity requirement under Rule 23(a)(1)—much of the evidence attached to the Supplemental Sobel Declaration addresses this challenge. In addition, the City Defendants' Opposition asserts that Sobel and attorney Colleen Flynn have a conflict of interest because they were present at the November 30, 2011 protests.

(*See* Suppl. Decl. of Carol Sobel ¶ 14, Ex. 4 [Doc. # 77].)

## C. *The Rule 23(a) Factors*

### 1. *Numerosity*

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). " '[I]mpracticability' does not mean 'impossibility,' ... only ... difficulty or inconvenience of joining all members of the class." *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 522 (C.D.Cal.2012) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir.1964)). The numerosity requirement imposes no absolute limitations; rather, it "requires examination of the specific facts of each case." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Thus, while the Supreme Court has noted that putative classes of 15 are too small to meet the numerosity requirement, *id.* at 330 & n. 14, district courts in this Circuit have found that classes with as few as 39 members meet the numerosity requirement, *see Patrick v. Marshall*, 460 F.Supp. 23, 26 (N.D.Cal.1978); *see also Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1320 (9th Cir.1982) (noting, in *dicta*, that the court "would be inclined to find the numerosity requirement ... satisfied solely on the basis of [39] ascertained class members"), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

■ Plaintiffs estimate that the Damages Class includes approximately 296 individuals, with 60 individuals in the Vicinity Sub-Class, 250 in the OR Sub-Class, 200 in the City Bus Sub-Class, and 90 in the County Bus Sub-Class. In support of their Reply, Plaintiffs submit an article published in the *Los Angeles Times* on December 1, 2011, which reported that 292 individuals were arrested on November 30, 2011. (Suppl. Sobel Decl. ¶ 2(a), Ex. 1.) Sobel also explains how counsel estimated the size of each of the Damages Sub-Classes, which includes data gathered from Plaintiffs, news articles,

and counsel's own observations. (Id. Exs.2–4.) Accordingly, the Court finds that Plaintiffs' allegations and supporting evidence adequately establish that the proposed class and subclasses are sufficiently numerous.

### 2. *Commonality*

■ The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' " *Dukes*, 131 S.Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157, 102 S.Ct. 2364). In determining that a common question of law exists, it is insufficient to find that all putative class members have suffered a violation of the same provision of law. *Id.* Rather, the putative class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Nonetheless, in conducting the commonality inquiry, one significant issue shared by the class may suffice to warrant certification. *Dukes*, 131 S.Ct. at 2556; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir.2011) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998) ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient....")).

Plaintiffs contend that the commonality requirement is easily satisfied by the fact that Defendants, specifically LAPD and LASD, applied a blanket policy of arrest to everyone on or in the vicinity of the City Hall lawn, denial of the opportunity for OR release, and extended confinement on buses under unacceptable conditions. Plaintiffs assert that the proposed Class poses the following legal questions:

(a) The circumstances and lawfulness of the determination that the City Hall

---

The Supplemental Sobel Declaration details Sobel's knowledge of the events and responds to the challenge that she cannot adequately represent her clients. Accordingly, the Supplemental Sobel Declaration and attached exhibits may be considered as part of Plaintiffs' Reply.

lawn could be peremptorily shut down and those there arrested as an unlawful assembly;

(b) The circumstances and lawfulness of LAPD's arrest of persons who were never given any dispersal order, or who were told that, if they did not wish to be arrested, they could move to a designated area, and when they did so, were nonetheless arrested;

(c) The circumstances and lawfulness of LAPD's arrest of persons who were not part of the Occupy activities and were arrested;

(d) The circumstances and lawfulness of the City Defendants' across-the-board refusal to comply with the mandatory requirements of Penal Code § 853.6 and release Plaintiffs OR absent an individualized determination that they should be denied liberty based on facts—not rank speculation—supporting one or more of the statute's limited list of exceptions to the requirement of mandatory OR release for misdemeanor arrestees; and

(e) The circumstances and lawfulness of holding Plaintiffs for hours on buses or in a garage, without access to bathroom facilities or water, while tightly handcuffed, before they were booked.

(Mot. at 13.) All of the proposed Damages Sub–Classes share questions (a), (b), (c), and (d). The City Bus and County Bus Sub–Classes share question (e). The Injunction Class shares question (d). Important to the Court's inquiry, however, is whether there are common answers to the questions posed.

Defendants contend that resolution of Plaintiffs' claims will require individualized, fact-specific analysis that precludes a finding of commonality. First, the County argues that issues relating to handcuffing and access to bathroom facilities, food, and water require individualized factual determinations, such as the existence of pain, physical injury, the amount of time handcuffs were applied or access to facilities, food, and water were denied, and whether the detainee requested a change in conditions. (Cnty. Opp'n at 14–15.) Similarly, the City Defendants argue that the claims for false arrest, unreasonable

seizure, and excessive force all require individual determinations as to whether probable cause existed for each arrest, the conduct of individual officers, and the reasonableness of each particular use of force. (*Id.* at 12–13.)

Plaintiffs respond that these individualized determinations are not at issue because the claims arise out of a blanket, uniformly applied policy of arrest and detention without probable cause and under unconstitutional conditions. "In the civil rights context, commonality is satisfied 'where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Parsons v. Ryan,* 289 F.R.D. 513, 516 (D.Ariz.2013) (quoting *Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir.2001)). "A policy, practice, or custom may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant officials are not reprimanded." *Id.* at 521 (citing *Menotti v. City of Seattle,* 409 F.3d 1113, 1147 (9th Cir.2005)). Although class certification should not be a "dress rehearsal for the trial on the merits," *id.* at 516 (quoting *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 811 (7th Cir.2012)), Plaintiffs must provide "significant proof" that the injuries inflicted were pursuant to a policy or practice, *Wang v. Chinese Daily News,* 709 F.3d 829, 833–34, 836 (9th Cir.2013).

#### a. *The Nature of the Arrests*

Plaintiffs provide at least "significant proof" that Defendants effectuated the arrests based on a blanket policy that applied with equal force to all arrestees and involved no individualized probable cause determinations. *Wang,* 709 F.3d at 834. According to Plaintiffs, City officials publicly voiced support for the Occupy protest shortly after it began on October 1, 2011, including by passing a formal resolution of support for the protestors. (FAC ¶¶ 5–6.) During this time, Defendants were aware that Plaintiffs and other protestors were maintaining 24–hour vigils on the City Hall lawn and had set up tents as an expression of their message opposing economic inequality. (*Id.* ¶ 11.) Plaintiffs allege that, on November 25, 2011, a televised press conference announced that protestors would no longer be allowed to

engage in expressive activities at City Hall. (*Id.* ¶ 15.) Shortly thereafter, signs tacked to trees surrounding City Hall announced that the area would be subject to nighttime closure under the City's park regulations, which had not previously been applied to the City Hall lawn. (*Id.*) This determination was apparently made pursuant to Cal.Penal Code § 407, which defines an "unlawful assembly" as an assembly of "two or more persons ... together to do an unlawful act, or to do a lawful act in a violent, boisterous, or tumultuous manner." The City Defendants allegedly developed a plan to remove the protestors, called "shock and awe," which they then executed on November 30, 2011. (*Id.*) Plaintiffs claim that the unlawful assembly determination was unconstitutional, and that therefore Defendants' indiscriminate arrest of all individuals within several blocks of City Hall, even those who had not been present for any dispersal order or who had moved to what they thought was a safe location, was an unlawful policy or practice. (*Id.*)

■ Deputy Chief Perez, who served as Incident Commander in the November 30, 2011 operation, states that the goal of the plan was to disallow individuals from camping out in the park past "permitted hours," not to curtail their rights to assemble during daylight hours. (Perez Decl. ¶ 4.) Perez admits that the plan involved an "element of surprise," although he states that he was "willing to compromise that" if protestors would leave the park without police intervention. (*Id.* ¶ 6.) The officers allegedly gave a dispersal order prior to making arrests, but according to the protesting Plaintiffs and Sobel, the order was muffled and not comprehensible. (Suppl. Sobel Decl. ¶ 15; Aichele Decl. ¶ 4; Clemente Decl. ¶ 5; Prysner Decl. ¶ 4.) Plaintiff Weitz did not receive an adequate warning to disperse before being arrested. (Weitz Decl. ¶ 4.) Based on this evidence, the Court finds that a common question exists as to the lawfulness of Plaintiffs' arrests to the extent they were based upon an overarching policy, namely, the declaration of an unlawful assembly on the City Hall lawn and subsequent mass arrests without individualized determinations.

Defendants cite *Kerr v. City of W. Palm Beach,* 875 F.2d 1546 (11th Cir.1989), *Haus v. City of New York,* 2011 U.S. Dist. Lexis 155735 (S.D.N.Y. Aug. 31, 2011), among other cases, in challenging the commonality of the arrest issues. But these cases are distinguishable from the present case. In *Kerr,* the plaintiffs brought a class action challenging the defendants' policy of using dogs to apprehend suspects. 875 F.2d at 1548. Unlike in the present case, members of the proposed *Kerr* class were arrested on an individual basis, at different times and under different circumstances, not subject to a broad, simultaneous arrest order. In *Haus,* the court found that commonality did not exist because, absent a "policy or practice of undertaking, encouraging or uniformly acquiescing in the use of excessive force against would-be demonstrators," there was no "'glue' to hold together the disparate claims of excessive force." 2011 U.S. Dist. Lexis 155735 at *319. As plaintiffs point out, in another case that year, the Southern District of New York certified a class of protestors who did offer sufficient evidence of an "unlawful policy or practice of indiscriminate mass arrest." *MacNamara v. City of New York,* 275 F.R.D. 125, 143 (S.D.N.Y.2011). Although *MacNamara* predates *Dukes,* this rationale still applies under the "common answers" standard. *See Dukes,* 131 S.Ct. at 2551.

### b. *Conditions of Confinement*

■ Plaintiffs also provide at least "significant proof" of commonality as to the conditions of confinement for those transferred on the City and County buses. The Named Plaintiffs who were held on these buses— Clemente, Alexander, and Prysner on the City buses and Aichele and Weitz on the County buses—attest to experiencing and observing conditions that were applied to everyone on the buses and during subsequent detention. Four of the Plaintiffs claim that they were held in tight plastic handcuffs for extended periods. (Clemente Decl. ¶ 4; Aichele Decl. ¶ 5; Prysner Decl. ¶ 5; Alexander Decl. ¶ 4.) Plaintiffs being held by the County and the City observed the denial of individual requests for restroom use and the resultant deterioration of sanitary conditions

on the buses. (Aichele Decl. ¶ 5; Weitz Decl. ¶ 5; Prysner ¶ 6.) Plaintiffs challenge the overall conditions in which they were detained on the buses. They need not prove that every single class member was subjected to every single adverse condition to establish a custom or practice of unconstitutional conditions. *See Thomas v. Baca*, 514 F.Supp.2d 1201, 1214 (C.D.Cal.2007) (evidence that "floor sleeping" occurred with regularity during the relevant period was sufficient to establish a custom or practice for purposes of summary judgment).

Defendants argue that the conditions complained of are not *"per se"* constitutional violations because they require individualized determinations. (*See* Cnty. Opp'n at 1415; City Opp'n at 11.) Several cases cited by the County address individual claims in which courts evaluated whether a particular detention was unlawful due to tight handcuffs or denial of requests for bathroom use, food, or water. *See, e.g., LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 960 (9th Cir.2000) (individual excessive force claim based on tight handcuffs was "fact specific" and should not have been resolved at summary judgment); *Bourdon v. Roney*, Case No. 99–00769, 2003 WL 21058177 at *11 (S.D.N.Y. Mar. 6, 2003) (individual arrestee who was denied bathroom privileges for three hours did not raise triable issue as to conditions of confinement claim). But, as Plaintiffs point out, the crux of the Fourth Amendment claims is that the generalized conditions of confinement—including the blanket denial of access to bathrooms, food, and water and the unsanitary conditions that resulted from these denials—violated the Fourth Amendment, not that individual officers violated the rights of individual class members by denying specific requests. Because the class members were held with other class members in one of

several locations, the conditions of their detention are shared and satisfy the commonality requirement.[12]

#### c. *Denial of OR Release*

Plaintiffs have also established that common questions exist as to the denial of OR release for the OR Sub–Class. Deputy Chief Perez asserts that the decision not to give OR release was based on two exceptions to Cal.Penal Code § 853.6(i), which allow the denial of OR release to an otherwise eligible arrestee where the person cannot provide satisfactory identification and where there is a "reasonable likelihood that the offense . . . would continue or resume. . . ." (Perez Decl. ¶ 10.) Cal. Pen.Code §§ 853.6(i)(5), (7). Perez explains that:

It seemed counterproductive on many levels, and inconsistent with Penal Code § 853.6(i)(7), to grant at-scene OR release to persons arrested in connection with the clearing of the park since we believed there was a reasonable likelihood that persons released would return to the park. It was clear to us that the occupying of the park was of great symbolic value to the occupiers, and that as a show of dedication to their cause, they would return to the park to re-occupy it if they were given immediate OR releases.

(*Id.* ¶ 11.)

The fact that members of the proposed class, including Plaintiffs Weitz and Alexander, were not actually participating in the protest but were merely reporting on the events suggests that the policy was actually applied in a blanket manner to individuals to whom the OR release exceptions did not apply. *See Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir.2012) (noting that "while standing is not appropriate where a plaintiff can avoid injury by avoiding illegal conduct,"

12. The County also cites *Bates v. Arata*, Case No. 05–03383, 2008 WL 820578 at *6–7 (N.D.Cal. Mar. 26, 2008), in which over 100 individuals were detained and denied bathroom access for four hours. First, *Bates* was not a class action and the court did not address the access question in the context of a Rule 23(a) commonality analysis. Second, in *Bates*, the defendant offered evidence that no arrestee asked to use a bathroom and officers were not ordered to deny bathroom access. *Id.* at *6. In contrast, Plaintiffs here

have presented evidence, which Defendants do not rebut, that individuals repeatedly asked to have their handcuffs loosened or to use the bathroom—and were ultimately forced to urinate on the buses, creating unsanitary conditions and a foul odor resulting not only from the urination but from vomiting caused by the stench. Thus, *Bates* does not prevent Plaintiffs from establishing common questions as to the conditions of their confinement.

the plaintiffs still had standing to seek injunctive relief because the defendants' policy placed them at risk of injury even if they complied with all criminal laws enforceable by the defendants). Thus, the focus of Plaintiffs' OR claims is on Defendants' admittedly pre-planned, blanket policy of denying OR release *without* an individualized determination of eligibility.

Moreover, if particular arrestees in fact lacked proper identification, they would not be members of the class because they would have an "objective disqualification" from OR release under Penal Code § 853.6. The list of arrestees published by the *Los Angeles Times* on December 1, 2011, provided identification information for approximately 8590% of those arrested—this list was apparently created using arrest records provided by the LAPD. (*See* Suppl. Sobel Decl. ¶ 14, Exs. 1, 4.) The very existence of the list calls into question Defendants' implied assertion that individual findings supported the decision to deny OR release, since the vast majority of arrestees apparently had adequate identification. Accordingly, Plaintiffs have submitted sufficient evidence to establish common questions as to the OR release issue.

### 3. *Typicality*

 Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175 (9th Cir.2010) (quoting *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Hanon,* 976 F.2d at 508). The typicality standard under Rule 23(a)(3) is "permissive": "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identi-

cal." *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir.2003) (quoting *Hanlon,* 150 F.3d at 1020).

Defendants do not challenge the typicality requirement independent of their challenge to commonality and vagueness of the class definitions. As the Court has already addressed these challenges above, it need not repeat itself here. All Plaintiffs and class members were arrested pursuant to the same dispersal order, at around the same time, in the same general location, held for extended periods of time due to the allegedly wrongful denial of OR release, and were held in similar custodial conditions. The Court finds that the typicality requirement is met.

### 4. *Adequacy of Representation*

 Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members." *Hesse v. Sprint Corp.,* 598 F.3d 581, 589 (9th Cir.2010) (citing *Hanlon,* 150 F.3d at 1020); *see also Dukes,* 131 S.Ct. at 2551 n.5 (explaining that the adequacy of representation inquiry is distinct from questions of typicality and commonality insofar as it "raises concerns about the competency of class counsel and conflicts of interest"). The Named Plaintiffs themselves must be entitled to seek injunctive relief if they are to represent a class seeking such relief. *Hodgers–Durgin v. de La Vina,* 199 F.3d 1037, 1045 (9th Cir.1999).

Defendants do not challenge the adequacy of Plaintiffs' representation of class interests beyond their challenges to commonality, typicality, and standing as to the Injunction Class. The Court has already addressed these challenges, *supra.* The Court finds that Plaintiffs will fairly and adequately represent the interests of the classes and subclasses.

Defendants do argue, however, that Class Counsel Carol Sobel "may have a conflict of interest" because she was present at the November 30, 2011 protest and was a perci-

pient witness to the events. (City Defs.' Opp'n at 14–15.) Defendants further surmise that Colleen M. Flynn may also have been present and thus have a similar conflict of interest. In response, Plaintiffs provide supplemental declarations in which they expressly waive any objection to Ms. Sobel continuing as counsel in this matter.[13] (*See* Suppl. Aichele Decl. ¶ 2; Suppl. Weitz Decl. ¶ 3; Suppl. Prysner Decl. ¶ 2; Suppl. Alexander Decl. ¶ 2; Suppl. Clemente Decl. ¶ 2 [Doc. # 78].) Sobel asserts that she has "no special knowledge" of the events based on her presence on November 30, 2011, and that neither she nor Flynn expects to testify at trial regarding the events. (Suppl. Sobel Decl. ¶ 17 [Doc. # 77].)

California Rule of Professional Conduct 5–210 provides that an attorney "shall not act as an advocate before a jury which will hear testimony from the member unless … (c) the [attorney] has the informed, written consent of the client." Defendants object to the waivers provided by the Named Plaintiffs on two grounds. First, according to Defendants, a waiver is required from *all putative class members*, and the Named Plaintiffs lack authority to grant such a waiver. [Doc. # 82.] Defendants cite no authority for the proposition that class representatives may not waive a conflict on behalf of class members. Instead, this question appears to be resolved by the adequacy of representation question more generally: if the Named Plaintiffs can adequately represent absentee class members in making other strategic decisions in the case, there is no reason why they cannot consent to counsel's continued representation with knowledge that she may be called to testify by Defendants.

Second, Defendants assert that the waivers provided are insufficient because they do not explicitly inform Plaintiffs of the possibility that Sobel may be called as a witness to be deposed or to testify at trial. The Court agrees that the waivers, which acknowledge Sobel's presence at and personal knowledge of the events, do not reflect that Plaintiffs were informed of or understand the potential consequences of that knowledge. In addition, although Defendants impliedly raise a similar challenge to Flynn's representation, the waivers provided do not address Flynn's status as a percipient witness or the likelihood that she will be called as a witness.

■ Given the nature of the alleged conflict, it is difficult to imagine any reason a class member might object to Sobel or Flynn's continued representation separate from any concerns the Named Plaintiffs may have. Nevertheless, to avoid any potential issues at trial, Plaintiffs must submit waivers directly addressing the possibility that Sobel and Flynn may be called to testify as witnesses, in accordance with Cal. Rule of Professional Conduct 5–210. Subject to the submission of adequate waivers, the Court finds that Sobel and Flynn's presence at the November 30, 2011 protests does not render them unable to adequately represent the class.

Plaintiffs have therefore established that the proposed class and sub-classes satisfy the requirements of Rule 23(a).

### D. *The Injunction Class*

As discussed above, Plaintiffs may seek to certify a class defined differently from that articulated in the original Complaint and FAC. The Court has already addressed Defendants' challenges to the class definitions, including their challenge to the Injunction Class's use of the language "objective disqualification" language, and it will not revisit that discussion here. The Court is troubled, however, by the breadth of the Injunction Class as it appears to extend to individuals who were or will be denied OR release under circumstances other than mass arrest situations like the Occupy protest. As a practical matter, a class definition that is not tethered

---

13. The City Defendants object to Plaintiffs' supplemental declarations on various grounds. First, as discussed in footnote 11, *supra*, these declarations were submitted in part in response to Defendants' challenge to adequacy of class counsel's representation, and therefore they are proper as part of Plaintiffs' Reply. In addition, the City Defendants argue that the Named Plaintiffs "lack the ability to provide a waiver on behalf of potential class members," but Plaintiffs do not purport to do so. It is clear from the language of the waivers that the Named Plaintiffs only speak on behalf of themselves with respect to the waiver.

to any specific offense conduct and which includes all individuals who have ever been or ever will be denied OR release without a particularized determination of eligibility would present insurmountable obstacles to the orderly administration of this case. It is unclear how the parties would ascertain class membership for the purpose of providing notice under Rule 23(c)(2)—as currently worded, it conceivably could apply to *every* person who has ever been or will ever be arrested for *any* misdemeanor.

Consequently, the Court narrows the Injunction Class as follows:

> All individuals who were arrested on or after November 30, 2011 for unlawful assembly and who were denied, and who may in the future be denied, released on their own recognizance pursuant to Penal Code § 853.6, who have no objective disqualifications from entitlement to release OR pursuant to Penal Code § 853.6, without a particularized and individualized determination that they are not eligible for OR release.

So cabined, the Injunction Class is sufficiently defined such that class membership is ascertainable and class notice may be served effectively.[14]

### 1. *Plaintiffs Have Standing to Seek Injunctive Relief*

 The City Defendants assert that Plaintiffs lack standing to seek injunctive relief on behalf of the Injunction Class. First, the City Defendants argue that Plaintiffs suffered no redressable harm for not being immediately released OR on November 30, 2011 (City Opp'n at 23), citing *Higbee v. City of San Diego*, 911 F.2d 377, 379 (9th Cir.1990). In *Higbee*, the court acknowledged that "[t]o require that those likely to continue to break the law be processed in a custodial manner certainly seems rational," and it noted that California law permits that some misdemeanants may be subject to post-arrest custody. *Id. Higbee* does not stand for the proposition that this post-arrest cus-

tody determination may be made wholesale to an entire class of arrestees based only on the location and timing of their arrest. Rather, Cal.Penal Code § 853.6(i) specifically refers to individual "person[s]," echoing the long-accepted requirement that determinations as to arrest and custody be made on an individualized basis. As the Court reads Plaintiffs' motion, it is the absence of this individualized determination—and not the custody alone—that injured the arrestees.

The City Defendants next argue that Plaintiffs cannot demonstrate a real threat of future injury. (City Opp'n at 23.) In the Ninth Circuit, a plaintiff may establish standing for prospective injunctive relief when "the alleged threatened injury is sufficiently likely to recur." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir.2010), *cert. denied*, 562 U.S. 1002, 131 S.Ct. 503, 178 L.Ed.2d 369 (2010). Put another way, a plaintiff must "demonstrate 'that he is realistically threatened by a repetition of [the violation].'" *Melendres*, 695 F.3d at 997–98 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). A plaintiff may prove that such an injury is likely to recur in two ways: (1) by showing "that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy'"; or (2) by showing "that the harm is part of a 'pattern of officially sanctioned behavior, violative of the plaintiffs' [federal] rights.'" *Id.* (quoting *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir.2010), *cert. denied*, 562 U.S. 1002, 131 S.Ct. 503, 178 L.Ed.2d 369 (2010); *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001), *abrogated on other grounds by Johnson v. Cal.*, 543 U.S. 499, 504–05, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005)).

Plaintiffs Aichele and Prysner attest that, although they have attended many protests in the past and continue to be involved in the Occupy movement, they have refrained from engaging in expressive activity that might be considered civil disobedience since November

---

**14.** The Court notes that the subset of individuals who "may in the future be denied" is likely to include many, if not all, individuals who were denied OR release on November 30, 2011. Because Defendants had previously announced their intent to clear the City Hall lawn, individuals who remained on or around the lawn that night are likely the type of individuals who will attend or observe similar events in the future.

2011 for fear of being arrested and detained. (Suppl. Aichele Decl. ¶ 3; Suppl. Prysner Decl. ¶ 3.) Plaintiff Weitz, a filmmaker, attests that he wishes to film protests in the future as part of his career. (Suppl. Weitz Decl. ¶ 4.) Defendants argue that these representations are insufficient to show a likelihood that Plaintiffs will be harmed in the future, citing *MacNamara v. City of New York*, a mass arrest case in which the court found insufficient the plaintiffs' "indeterminate future plans to participate in New York City protests." 275 F.R.D. at 140–41. In contrast, Plaintiffs in the case at bar assert standing based upon the chilling effect that the City's OR policy has had on their expressive activity. Courts in the Ninth Circuit have found standing based upon similar facts. *See Melendres*, 695 F.3d at 995; *MIWON*, 246 F.R.D. at 627.

Furthermore, Plaintiffs allege that the City instituted a policy of "denying OR release to individuals who engaged in civil disobedience, and were arrested for failure to disperse, trespass and similar non-violent misdemeanor offenses arising from protest activity." (FAC ¶ 21.) On November 17, 2011, Deputy Chief Perez allegedly made a public statement that "the LAPD would no longer grant OR release to individuals arrested for engaging in civil disobedience." *Id.* The decision was allegedly made to "teach people a lesson." *Id.* These remarks, if true, would constitute a "policy" from which Plaintiffs' injury stems. Deputy Chief Perez does not deny his earlier alleged statements, specifically that LAPD intended to enact a policy of denying OR release to individuals arrested for engaging in civil disobedience. Instead, Perez asserts that the decision not to give OR release was based on two exceptions to Cal.Penal Code § 853.6(i), which allow the denial of OR release to an otherwise eligible arrestee where the person cannot provide satisfactory identification and where there is a "reasonable likelihood that the offense ... would continue or resume...." (Perez Decl. ¶ 10.) Cal. Pen. Code §§ 853.6(i)(5), (7). The fact that members of the proposed class, including Plaintiffs Weitz and Alexander, were not actually participating in the protest but were merely observing the events suggests that the policy

was applied in a blanket manner to individuals to whom the OR release exceptions did not apply. *See Melendres*, 695 F.3d at 998 (noting that "while standing is not appropriate where a plaintiff can avoid injury by avoiding illegal conduct," the plaintiffs still had standing to seek injunctive relief because the defendants' policy placed them at risk of injury even if they complied with all criminal laws enforceable by the defendants). Under *Melendres*, the existence of this policy and practice is sufficient to create standing. *See* 695 F.3d at 997–98.

### 2. *The Rule 23(b)(2) Requirements*

Classes may be certified pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). Class certification under Rule 23(b)(2) is possible only when declaratory or injunctive relief is sought. Rule 23(b)(2) certification is available for monetary relief, if at all, only when such relief is incidental to the injunctive or declaratory relief. *Dukes*, 131 S.Ct. at 2557. This subsection "applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 131 S.Ct. at 2557.

In determining whether certification is appropriate under Rule 23(b)(2), a court must "look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir.2010). "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Id.* (citing *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir.1998)). Claims for individualized relief, in contrast, do not satisfy Rule 23(b)(2). *Dukes*, 131 S.Ct. at 2557. Rule 23(b)(2) itself contemplates "actions in the civil-rights field where a party is charged

with discriminating unlawfully against a class." Advisory Committee's Notes; *see also Walters,* 145 F.3d at 1047 (explaining that Rule 23(b)(2) "was adopted in order to permit the prosecution of civil rights actions").

 The FAC seeks an injunction requiring Defendants to expunge, seal, and destroy all records derived from the November 30, 2011 arrests, presumably for all members of the Injunction Class only. Because the Injunction Class includes only individuals who had no objective disqualifications from entitlement to OR release and were not subject to an individualized determination of eligibility for OR release, the injunctive relief sought would apply broadly and equally to all Injunction Class members. Moreover, the City Defendants do not meaningfully challenge the Injunction Class's ability to meet the Section 23(b)(2) requirements. Accordingly, the Court finds that Plaintiffs satisfy the requirements of Section 23(b)(2) with regard to the Injunction Class.

## E. *The Rule 23(b)(3) Requirements for the Damages Class*

In addition to the Rule 23(a) requirements, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes,* 131 S.Ct. at 2548. "[I]ndividualized monetary claims belong in Rule 23(b)(3)." *Id.* at 2558. Accordingly, Plaintiffs seek certification under Rule 23(b)(3), which is appropriate where the "questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

### 1. *Common Issues Predominate*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon,* 150 F.3d at 1022. " '[T]here is clear justification for handling the dispute on a representative rather than an individual basis' if 'common questions present a significant aspect of the case and they can be resolved for all members of the

class in a single adjudication.' " *Mazza,* 666 F.3d at 589 (quoting *Hanlon,* 150 F.3d at 1022).

### a. *Common Issues of Liability*

Defendants argue that individual issues predominate at the liability stage because a determination whether an arrestee's rights were violated requires an individualized assessment of the facts for each arrestee. For example, Defendants argue that an individual's First Amendment rights will not have been violated if he or she was not actually engaged in First Amendment activity prior to his or her arrest. Similarly, as discussed above, whether the Fourth Amendment was violated turns on the specific circumstances of each individual's arrest and detention. The Court has already addressed Defendants' arguments that common questions do not exist at all due to the purportedly individualized nature of constitutional determinations. The Court will not revisit those arguments here, and addresses Defendants' challenge to predominance only insofar as it raises new arguments.

### b. *Commonality at the Damages Stage*

The County Defendants argue that the question of damages requires individualized determinations inappropriate for class treatment. In support of this argument, the County cites *Thomas v. Baca,* Case No. 04–08448, 2012 WL 994090 (C.D.Cal. Mar. 22, 2012). In *Thomas,* the district court certified a class of inmates held by the LASD who were allegedly forced to sleep on the floor at least once during a two-year period. *See* 514 F.Supp.2d at 1204. The court granted summary judgment in favor of the plaintiff class, finding that LASD had a pattern or practice of forcing inmates to sleep on the floor in violation of their Eighth Amendment rights. *Id.* at 1220. Seven years later, the plaintiffs requested damages for pain and suffering, and the Court concluded that this new request rendered the class action unmanageable, in part because the damages analysis would require individualized questions of proof that were better resolved on an individual basis. *Thomas,* 2012 WL 994090 at *3.

■ The County's reliance on *Thomas* is flawed in two key ways. First, the 2012 decertification in *Thomas* did not disturb the earlier finding that a class action was appropriate for purposes of determining liability and causation—it decertified the class only at the damages stage. Because a court may modify its certification order at any time prior to final judgment, the fact that later developments in this case *may* render the class mechanism inappropriate does not undermine its usefulness at this stage, when Plaintiffs seek to establish alleged constitutional violations based on uniform, broadly applied policies affecting each class member equally. *See* Fed.R.Civ.P. 23(c)(1)(C). Second, the plaintiffs in *Thomas* sought individualized pain and suffering damages, whereas Plaintiffs in this case seek only general damages.[15] General damages for pain and suffering and loss of dignity are available in actions under 42 U.S.C. § 1983. *See Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1086–87 (9th Cir.2009) (compensatory damages may be awarded for humiliation and pain and suffering even where plaintiff did not submit evidence of economic loss or mental or physical symptoms) (citing *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir.1994)); *Barnes v. Dist. of Columbia*, 278 F.R.D. 14, 20 (D.D.C.2011) (general damages based on affront to human dignity were appropriate in class action strip search case *In re Nassau County Strip Search Cases*, 742 F.Supp.2d 304, 323 (E.D.N.Y.2010) (same). Plaintiffs here specifically *do not seek* special damages for out-of-pocket losses such as lost earnings or medical expenses, which likely would require individualized inquiries. Thus, at this stage, it appears that the likelihood that individual damages questions will ultimately predominate over common ones is slim. The Court may modify its order at a later stage if developments in the case suggest otherwise.

■ In the Court's view, *Comcast v. Behrend*, —— U.S. ——, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013), does not change the settled rule in this Circuit that "damages calculations alone cannot defeat certification." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513 (9th Cir.2013) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir.2010)). In *Comcast*, an antitrust case, the Court found that "[q]uestions of individual damage calculations [would] inevitably overwhelm questions common to the class" because the class damages model presented failed to adequately tie the damages to the defendants' allegedly wrongful acts. 133 S.Ct. at 1435. Thus, the Court concluded that class-wide damages were improper in that case. *Id.* at 1435. In *Leyva*, a post-*Comcast* case, the Ninth Circuit found that common questions predominated notwithstanding individualized damages in a wage-and-hour case, where damages are nearly always individualized. 716 F.3d at 513. Because "damages could feasibly and efficiently be calculated once the common liability issues [were] adjudicated," the court concluded that the predominance requirement of Rule 23(b)(3) was met notwithstanding *Comcast*'s recent pronouncement. *Id.* at 514. Thus, as long as an efficient mechanism exists to calculate damages on a class-wide basis, the existence of potential individualized damages will not defeat the predominance require-

---

**15.** In their Reply, Plaintiffs explain that they may seek "presumed damages," which are available for injuries that are "likely to have occurred but difficult to establish." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 311, 106 S.Ct. 2537, 2545, 91 L.Ed.2d 249 (1986). Presumed damages are a substitute for ordinary compensatory damages. *Id.* In the civil rights context, however, damages may not be "presumed to flow from every deprivation of procedural due process." *Carey v. Piphus*, 435 U.S. 247, 263, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978). The Ninth Circuit has not addressed whether presumed damages are appropriate for constitutional violations or whether a general damages calculation is appropriate in the class action civil rights context post-*Dukes*. Several district courts have addressed the question and reached disparate conclusions. *See, e.g., United States v. City of New York*, 276 F.R.D. 22, 42–43 (E.D.N.Y.2011) (presumed or general damages were not appropriate in employment discrimination class action because calculation of damages required individualized determinations); *Barnes v. Dist. of Columbia*, 278 F.R.D. 14, 20–21 (D.D.C.2011) (allowing for general damages in civil rights class action based on testimony of sample of class members). In any event, the Court may modify its certification order at any time before judgment should later developments in the law or a more fully developed factual record suggest that class-wide calculation of damages would not be feasible.

ment. Based on the evidence submitted at this stage, the Court finds that common questions predominate.

### 2. *A Class Action is Superior to Individual Suits*

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175–76 (9th Cir.2010) (citation omitted). Here, the City Defendants emphasize that the individualized determinations necessary to find liability as to each class member give class members a strong interest in individually controlling their own cases. (City Opp'n at 19–20.) As discussed above, however, the common questions as to the nature of the arrests, confinement, and denial of OR release obviate the need for individualized determinations on these liability issues. Moreover, the cost of prosecuting nearly 300 individual civil rights cases based on the same set of facts would likely far exceed individual damages awards. Accordingly, the superiority requirement is met.

### V.

### *CONCLUSION*

The Court finds that the Damages Class and Sub–Classes and the Injunction Class, as modified herein, satisfy the requirements of Fed. R. Civ. P. 23(a). The Damages Class and Sub–Classes satisfy the requirements of Rule 23(b)(3), and the Injunction Class complies with Rule 23(b)(2).

In light of the foregoing, the Court orders the following:

(1) The Court certifies the proposed classes and sub-classes as follows:

*Damages Class*: All persons who were arrested in or around the vicinity of City Hall (in the area between Los Angeles Street and Broadway Street and between Cesar Chavez Avenue and Second Street) on November 30, 2011 between the hours of midnight to 3:00 a.m. in connection with law enforcement agencies' efforts to disperse the Occupy Los Angeles protest.

*Vicinity Sub–Class*: All persons who were arrested in or around the vicinity of City Hall on November 30, 2011, although they were not participating in the Occupy protest at Los Angeles City Hall at all, or had removed themselves from it at the direction of the police.

*OR Sub–Class*: All persons who were arrested in or around the vicinity of City Hall on November 30, 2011; who had no objective disqualifications from entitlement to release OR pursuant to Penal Code § 853.6; and who were not released OR before or immediately after the booking process was completed.

*City Bus Sub–Class*: All persons who were arrested in or around the vicinity of City Hall on November 30, 2011, and who were transported on buses driven to the LAPD's Metropolitan Detention Center.

*County Bus Sub–Class*: All persons who were arrested in or around the vicinity of City Hall on November 30, 2011, and who were transported to Van Nuys jail on buses driven by members of the Los Angeles County Sheriff's Department.

*Injunction Class*: All individuals who were arrested on or after November 30, 2011 for unlawful assembly and who were denied, and who may in the future be denied, release on their own recognizance pursuant to Penal Code § 853.6, who have no objective disqualifications from entitlement to release OR pursuant to Penal Code § 853.6, without a particularized and individualized determination that they are not eligible for OR release.

(2) The Court approves Plaintiffs Cheryl Aichele, Carina Clemente, Jonathan Alexander, Michael Prysner, and James Weitz as representatives of the Class.

(3) The Court approves the following law firms as class counsel: Kyle McLane Bednarski and Litt, LLP; Carol A. Sobel Law Offices; Schonbrun DeSimone Seplow Harris Hoffman and Harrison, LLP; and

Hadsell Stormer Richardson and Renick, LLP.[16]

(4) By no later than September 9, 2013, the parties shall meet and confer and submit to the Court a proposed class notice pursuant to Fed. R. Civ. P. 23(c)(1).

IT IS SO ORDERED.

---

16. The approval of Carol Sobel and Colleen M. Flynn as class counsel is contingent upon their submission of Plaintiffs' waivers which are consistent with this Order and California Rule of Professional Conduct 5–210. Such waivers shall be filed by no later than **September 10, 2013**. Failure to timely submit the written waivers shall result in the modification of this Order to reflect their disqualification as class counsel.